MESTDAGH v. WILKINS.

FRAUD—EVIDENCE—SUFFICIENCY—DIRECTED VERDICT.

In an action by the seller of corporate stock for fraud and conspiracy on the part of the purchasers, evidence *held*, insufficient to sustain charges, and therefore verdict was properly directed for defendants.

Error to Jackson; Simpson (John), J.  Submitted June 3, 1930.  (Docket No. 19, Calendar No. 34,989.) Decided October 3, 1930.

Case by Hector Mestdagh and another against George H. Wilkins and another for fraud in purchase of stock.  From directed verdict and judgment for defendants, plaintiffs bring error.  Affirmed.

*Jacobs & Gronewold, Earl L. Burhans,* and *Harry C. Howard,* for plaintiffs.

*Richard Price* and *Whiting & Kleinstiver,* for defendants.

Clark, J.  Plaintiffs review on error judgment for defendants entered on directed verdict in an action for damages for fraud in the sale of shares of stock of Riverside Forge & Machine Company, a Michigan corporation.  The company had prospered from the beginning and had paid satisfactory dividends largely by stock distribution upon transfer of surplus to capital.  At and before the time in question, February, 1928, the principal or controlling stockholders were Alidor Lefere, Henry Lefere, George H. Wilkins, and Hector Mestdagh.  Alidor Lefere was a brother-in-law of plaintiff Hector Mestdagh, as was also Henry Lefere.  Alidor Lefere was president of the company, and Wilkins was secretary and treasurer.  Mestdagh had been shop superintendent and Henry Lefere was a department superintendent.  Mestdagh had acquired personal business interests, and the president, Alidor Lefere, displeased, requested Mestdagh either to give up such interests or to resign his position with the company.  Accordingly, Mestdagh, in June, 1927, re-

signed as superintendent and director and was not thereafter active in the affairs of the company. His relations with the president thereafter were not altogether happy.

Plaintiff Mestdagh owned 275 shares, and his wife, the other plaintiff, owned 100 shares of the total of 5,235 shares. Later Mestdagh wanted to sell the 375 shares. He obtained a financial statement of the affairs of the company. He engaged a bond or stock salesman in an unsuccessful effort to sell the shares for $75,000.

Early in 1928 the stockholders, except plaintiffs and one other, had agreed to increase largely the capital stock and to put it on the market, and to that end a contract with Otis & Company of Detroit was contemplated. Under the terms of the proposed contract, Otis & Company were to acquire and have one-fourth of the shares, and at least 95% were to be made subject to the contract. It was necessary therefore that plaintiffs assent to the proposal or that their shares be acquired. In discussing what should be done, Otis & Company proposed to buy the shares, but defendants Wilkins and Alidor Lefere said they would handle it.

Wilkins saw Mestdagh to acquire the shares. He told him there was a deal on, but declined to tell what it was. He said, which it seems was not incorrect, that he could dispose of part of his stock if he could acquire plaintiffs' stock. There was further talk in which it is argued there were false representations, which we need not discuss.

The following paper evidences the agreement made:

"February 24–28.

"For value received, I hereby agree to sell to G. H. Wilkins, 375 shares Riverside Forging &

Machine Company's stock at a total price of not less than $70,000 to be paid in cash. Receipt of $10 to bind the sale is hereby acknowledged.

"HECTOR MESTDAGH."

There is testimony and argument of the meaning of the words "total price of not less than $70,000 to be paid in cash." The writing does not fix the price of the shares. The only explanation of this is plaintiff's own testimony that Wilkins agreed that plaintiffs have "all that came out of it."

The following day plaintiffs refused to be bound by the writing, sought independent counsel and advice, asked nothing of defendants, and offered the stock to Wilkins for $75,000 cash. Wilkins consulted Alidor Lefere, and they borrowed $75,000, paid plaintiffs, and took the stock. The contract with Otis & Company was later made and carried out, and this suit followed.

In directing a verdict, the trial judge held there was misjoinder of plaintiffs, which question we pass as unnecessary to decision here, and he said, with which we are in accord:

"The court is also of the opinion that there has been no evidence offered which tends to prove that any conspiracy was entered into by the defendants in this case or that there was any joint or concerted action on the part of the defendants in this case. The testimony discloses that the defendant Alidor Lefere never talked with either one of the plaintiffs with regard to this matter at any time. The only evidence in the case tending to show any connection on the part of Alidor Lefere with the transaction, is the testimony of the banker who stated that a loan was made by Mr. Wilkins, and also that a loan was made by Mr. Lefere, and that the two loans together made up the amount of $75,000 which was used to pay for the stock in question in this case. There is

no evidence that the defendant, Alidor Lefere, in any way procured the stocks of the plaintiff, and the court is of the opinion therefore that no conspiracy and no joint fraud has been shown to have existed, or been perpetrated by the defendants, George H. Wilkins and Alidor Lefere.

"The testimony further shows that plaintiff, Hector Mestdagh, made a written agreement with George H. Wilkins, one of the defendants, to sell to the said George H. Wilkins, 375 shares of the stock of the Riverside Machine Company; that when he signed this agreement, said plaintiff Hector Mestdagh was of the opinion that the stock he was selling was worth $70,000; that shortly thereafter, and as a matter of the next day, the 25th of February, 1928, he sought the advice of various people with reference to his stock, and when he met the defendant, Wilkins, he told him that he refused to be bound by the written agreement. He then made a new offer to defendant Wilkins, one of the defendants, in which he stated that he believed his stock was worth $200 a share, or $75,000, and that he would take that sum for it. At this time no representations of any kind were made to the plaintiff, Hector Mestdagh, by the defendant, George H. Wilkins. Plaintiff's action was based entirely upon his own judgment in making this offer. Later the offer was accepted by the said George H. Wilkins. The court is also of the opinion that under the so-called option agreement, and as shown by the testimony in the case, the plaintiff, Hector Mestdagh, was to have been allowed the benefit of any increase in price that may have come out of the transaction that was then in contemplation, but that the said Hector Mestdagh refused to take advantage of the said option agreement, but instead made a new and separate and distinct agreement in which he agreed to sell his stock and under which he did sell his stock; and it is the opinion of the court there was no fraud alleged, as of February 25th, and as the testimony does not dis-

close, that any representations, fraudulent or other-wise, were made on February 25, 1928, which was the time of entering into the second agreement, and at which time plaintiff sold his stock to defendant Wilkins; the court is of the opinion that the plaintiffs cannot recover in this action, and therefore directs a verdict of no cause of action, in favor of defendants."

Affirmed.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.